UNITED STATES of America,
Plaintiff–Appellee,

v.

Ronald FUESTING,
Defendant–Appellant.

No. 87–1006.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 11, 1987.

Decided April 15, 1988.

Robert Weiner, Robert Weiner Law Office, Springfield, Ill., for defendant-appellant.

James Porter, Asst. U.S. Atty., Frederick J. Hess, U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Before WOOD and POSNER, Circuit Judges, and GRANT, Senior District Judge.*

* Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

GRANT, Senior District Judge.

Defendant Ronald Fuesting appeals his conviction on two counts of a superseding criminal indictment charging him with possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1), and with attempt to manufacture marijuana, 21 U.S.C. §§ 841(a)(1) and 846.

## I. *Facts*

In the summer of 1985, the Illinois State Police were involved in a marijuana eradication program known as "Operation Kneecap". On July 31, 1985, Officers Larry Coughlin and Michael Summerville were returning via helicopter from a cutting operation when they observed what appeared to be a field of marijuana approximately 80 yards from the Fuesting residence, and a path leading from the field to the back door of the house. After landing, the field was confirmed to be marijuana and the area was secured.

Debra Fuesting, the defendant's wife, was subsequently observed driving away from the house and was stopped by police at a nearby roadblock. After being advised of her *Miranda* rights, Mrs. Fuesting was briefly detained for questioning concerning the marijuana field. Mrs. Fuesting voluntarily answered the questions put to her by Officer Harold Tarrant, and after initially denying any knowledge of the field, stated that the marijuana did in fact belong to her husband and that there could be more in the basement of their residence. Mrs. Fuesting thereafter agreed to accompany Officer Tarrant to the police station for further questioning. At the station, she was again advised of her rights. After consulting with an attorney and being advised by the police that she was not under arrest, Mrs. Fuesting left the police station without further questioning.

Based on the observations of the helicopter team and statements made by Mrs. Fuesting, the police sought a search warrant for the Fuesting home. A warrant, however, had not yet been issued when

Mrs. Fuesting returned home. Officer Summerville approached Mrs. Fuesting and asked her to leave the premises. When she inquired about retrieving a few items from the house, Officer Summerville agreed to her request and, without Mrs. Fuesting's consent, accompanied her into the home.

A search warrant was issued and executed later that evening, resulting in the seizure of a quantity of marijuana and a number of items related to the production thereof from the basement of the Fuesting residence.

Robert Fuesting was arrested by state authorities on July 31, 1985, and was charged in an Illinois state court on August 1, 1985 with possession of marijuana with intent to deliver and with manufacturing marijuana. The state charges were dismissed *nolle prosequied* on September 13, 1985.

Similar charges were thereafter filed in the United States District Court for the Southern District of Illinois by way of a complaint on September 5, 1985. On September 18, 1985, a day before the preliminary hearing was to be conducted, the government moved to dismiss the complaint on the grounds that it "[was] going to present evidence and witnesses to the Grand Jury to further develop this case." The government's motion to dismiss was granted over Fuesting's objection on September 19, 1985.

In addition to the criminal complaint, the government filed a civil complaint for forfeiture against Fuesting. The civil complaint was filed on September 5, 1985; and on March 5, 1986, almost six months after criminal charges had been dismissed, the government served notice of its intent to take the discovery depositions of both Fuesting and his wife.[1]

A two-count indictment was subsequently returned against Fuesting on May 22, 1986, charging him with possession with the intent to distribute marijuana and with manufacturing marijuana, 21 U.S.C. § 841(a)(1).

Fuesting was arraigned on June 6, 1986, and the cause scheduled for jury trial on July 1, 1986. Following his arraignment, Fuesting filed several pretrial motions, including: a motion in limine to suppress evidence of marijuana taken from the field adjoining his property; a motion to suppress evidence illegally seized from the Fuesting home; and a motion to dismiss the May 22, 1986 indictment.

A superseding indictment was filed on June 27, 1986 modifying Count II of the original indictment to charge Fuesting with "attempt to manufacture" marijuana, 21 U.S.C. §§ 841(a)(1) and 846. At his arraignment on July 1, 1986, Fuesting moved to dismiss the superseding indictment and to strike Count II of that indictment.

At a final pretrial conference conducted that same day, the district court found that the cause could not proceed to trial as scheduled given the outstanding pretrial motions, that additional argument was warranted on the motion to suppress, that any period of delay resulting from the pretrial motions was excludable for purposes of determining the defendant's speedy trial rights, and that the July 1, 1986 trial date should be stricken from the court's calendar. Each of the pending pretrial motions was denied, with the last order entered on August 28, 1986. The cause was thereafter reset for trial on November 3, 1986.

The jury trial began on November 5, 1986 and concluded on November 12 with a finding of guilt on both counts of the superseding indictment. Fuesting was sentenced to two years in prison on each count, with the sentences to run concurrently, followed by a special parole term of three years.

Fuesting now appeals his conviction, alleging that the district court erred (1) in denying the motions to dismiss the federal indictments filed on May 22, 1986 and June 27, 1986; (2) in denying the motions to suppress evidence seized from the marijuana field and from his home; and (3) in refusing to admit the testimony of certain

---

**1.** The record shows that the deposition of Debra Fuesting was taken on April 8, 1986. There is no indication in the record that Ronald Fuesting's deposition was ever taken.

witnesses called in his defense. We discuss each of these issues in turn.

## II. *The Motions to Dismiss*

### A.

Fuesting moved to dismiss both the original and superseding indictments on the grounds that the delay prior to indictment violated his rights under the Speedy Trial Act, 18 U.S.C. § 3161.[2] He expands that argument on appeal to include an alleged deprivation of his right to due process and to a speedy trial under the fifth and sixth amendments to the Constitution.[3]

*Speedy Trial:* The district court found that the time between dismissal of the September 5, 1985 complaint and the return of the federal indictment on May 22, 1986 was excludable for purposes of the Speedy Trial Act, *United States v. MacDonald*, 456 U.S. 1, 7 n. 7 and accompanying text at 7–9, 102 S.Ct. 1497, 1501 n. 7, 1501–1503, 71 L.Ed.2d 696 (1982), and that the filing of state charges on August 1, 1985 was irrelevant to a speedy trial determination under the Act. *United States v. Iaquinta*, 674 F.2d 260, 267 (4th Cir.1982); *United States v. Burkhalter*, 583 F.2d 389, 392 (8th Cir. 1978). It therefore denied the motion to dismiss both the original and superseding indictments.

Fuesting argues on appeal that the preindictment delay in his case should have been considered in determining whether there had been a violation of his right to a speedy trial, and that the district court erred when, relying on *MacDonald*, it found the time between dismissal of the complaint and the return of the initial indictment to be excludable under the Speedy Trial Act. He maintains that he asserted his right to a speedy trial when he objected to the dismissal of the federal complaint; that he never waived that right; that at the time the complaint was dismissed, the government had in its possession all of the information it needed to bring its case before the next grand jury; that its failure to do so until May 1986 resulted in an "inordinate delay"; and that he was prejudiced by the delay, and was thereby denied his right to a speedy trial and to due process.[4]

To the extent Fuesting asserts a violation of his right to a speedy trial under either the Speedy Trial Act or the sixth amendment, we find his arguments to be without merit.

The Speedy Trial Act (the "Act") provides in pertinent part:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an ... indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the ... indictment, or from the date the defendant has appeared before a judicial officer

**2.** Fuesting does not challenge the period of delay between the May 22, 1986 indictment and the actual commencement of trial on November 5, 1986. Much of the delay following indictment was attributable to the filing and disposition of defendant's pretrial motions, and was properly excluded by the district court in calculating the time limits under the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(F).

**3.** The government maintains that Fuesting has waived any arguments he may have had under the fifth and sixth amendments by failing to raise those arguments at the district court level. While it is true that a litigant generally waives his right to argue on appeal an issue which was not raised before the trial court, *United States v. Whaley*, 830 F.2d 1469, 1475 (7th Cir.1987); *Holleman v. Duckworth*, 700 F.2d 391, 394–95 (7th Cir.), *cert. denied*, 464 U.S. 834, 104 S.Ct. 116, 78 L.Ed.2d 116 (1983), and that Fuesting did not specifically raise a fifth or sixth amend-

ment claim in his written motions to dismiss the original and superseding indictments, he did raise both a speedy trial and due process argument as part of his oral motion to reconsider the court's order of June 30, 1986 denying the motion to dismiss the original indictment. Accordingly, we believe circumstances warrant our consideration of Fuesting's constitutional claims.

**4.** Fuesting specifically alleges that the "inordinate delay" in his indictment interfered with his liberty, interrupted his employment, drained his financial resources, curtailed his associations, subjected him to public obloquy, and created anxiety in him, his family and his friends. He thus concludes that under *Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973) he has met his burden of showing actual prejudice, and that the government's reasons for the delay were insufficient when balanced against the resulting prejudice.

of the court in which such charge is pending, whichever date last occurs ... 18 U.S.C. § 3161(c)(1).

■ The Act was intended "to give effect to the sixth amendment right to a speedy trial...." S.Rep. No. 93–1021, p. 1 (1974), and specifically provides that any period of delay between the dismissal of charges and the subsequent reinstatement thereof shall be excluded in computing the time in which trial must commence. 18 U.S.C. §§ 3161(d), (h)(6); *MacDonald,* 456 U.S. at 7 n. 7, 102 S.Ct. at 1501 n. 7. "When no indictment is outstanding, only the '*actual* restraints imposed by arrest and holding to answer a criminal charge ... engage the particular protections of the speedy trial provisions of the Sixth Amendment.'" *United States v. Loud Hawk,* 474 U.S. 302, 310, 106 S.Ct. 648, 654, 88 L.Ed.2d 640 (1986), quoting *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Fuesting's arrest on July 31, 1985 by state authorities and the subsequent filing of state charges on August 1, 1985 was properly ignored by the district court in determining Fuesting's speedy trial rights in the present case. The state charges were dismissed *nolle prosequied* on September 13, 1985. "Once charges [were] dismissed, the speedy trial guarantee [was] no longer applicable." *MacDonald,* 456 U.S. at 8, 102 S.Ct. at 1502. *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), a case cited by Fuesting, does not suggest

otherwise.[5] Only a federal arrest would have triggered the time provisions under the Act. *United States v. Adams,* 694 F.2d 200, 202 (9th Cir.1982), *cert. denied,* 462 U.S. 1118, 103 S.Ct. 3085, 77 L.Ed.2d 1347 (1983); *United States v. Iaquinta,* 674 F.2d 260, 264–69 (4th Cir.1982); *United States v. Wilson,* 657 F.2d 755, 767 (5th Cir.1981), *cert. denied,* 455 U.S. 951, 102 S.Ct. 1456, 71 L.Ed.2d 667 (1982).

■ Fuesting's speedy trial rights would have begun to run, at the earliest, on September 5, 1985, the date the federal complaint was filed. 18 U.S.C. § 3161(c)(1). Under both the Act and the sixth amendment, those rights would have been tolled after the complaint was dismissed on September 19, 1985,[6] and would not begin to run again until charges were subsequently reinstated by the May 22, 1986 indictment, or Fuesting's initial appearance before the magistrate on June 6, 1986, the event which last occurred. 18 U.S.C. § 3161(c)(1), (d) and (h)(6); *Loud Hawk,* 474 U.S. at 310–12, 106 S.Ct. at 653–54; *MacDonald,* 456 U.S. at 8, 102 S.Ct. at 1502; *Marion,* 404 U.S. at 320, 92 S.Ct. at 463. The time was therefore properly excluded by the district court in determining whether Fuesting's right to a speedy trial had been violated. Had Fuesting been subject to incarceration or bail during the eight month period between dismissal of the complaint and reindictment, his allegations of prejudice may have persuaded us differently.[7] He was not.

---

**5.** At the district court level, Fuesting argued that under *Klopfer v. State of North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), the dismissal of the state charges *nolle prosequied* on September 13, 1985, did not permanently terminate the criminal proceedings against him, and that his right to a speedy trial therefore began to run when the state charges were brought, and continued to run after they were dismissed.

The district court found that *Klopfer* was based on a unique North Carolina law which held that *nolle prosequi* did not permanently terminate proceedings, and thus distinguished it from the present fact situation. Those findings are in accordance with the Supreme Court's decision in *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). *See MacDonald,* 456 U.S. at 8 n. 8, 102 S.Ct. at 1502 n. 8.

**6.** Fuesting's consent to the dismissal was not required. Fed.R.Crim.P. 48(a); *United States v. Delagarza,* 650 F.2d 1166, 1167 (10th Cir.), *cert. denied,* 452 U.S. 917, 101 S.Ct. 3053, 69 L.Ed.2d 421 (1981). Neither was his *pro forma* objection to that dismissal relevant to a determination of his right to a speedy trial. *See United States ex rel. Mitchell v. Fairman,* 750 F.2d 806, 809 (7th Cir.1984).

**7.** When a defendant is subject to incarceration or bail, the court must undertake a balancing test in determining whether the defendant's speedy trial rights have been violated by a delay in prosecution. *United States v. Loud Hawk,* 474 U.S. 302, 311 n. 13, 106 S.Ct. 648, 654 n. 13, 88 L.Ed.2d 640 (1986); *Barker v. Wingo,* 407 U.S. 514, 530–33, 92 S.Ct. 2182, 2192–93, 33 L.Ed.2d 101 (1972). The test assesses the "length of delay, the reason for the delay, the

To the extent Fuesting alleges that the government should have brought its case before the grand jury earlier, we would simply note "that prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt." *United States v. Lovasco*, 431 U.S. 783, 791, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977). As the Supreme Court held in *Lovasco:*

> We would be reluctant to adopt a rule which would [require prosecution once the evidence of guilt is clear] absent a clear constitutional command to do so. We can find no such command in the Due Process Clause of the Fifth Amendment. In our view, investigative delay is fundamentally unlike delay undertaken by the Government solely "to gain tactical advantage over the accused," *United States v. Marion*, 404 U.S. at 324, precisely because investigative delay is not so one-sided.

431 U.S. at 795, 97 S.Ct. at 2051.

"Any undue delay after charges [were] filed, must [therefore] be scrutinized under the Due Process Clause, not the Speedy Trial Clause." *MacDonald*, 456 U.S. at 7, 102 S.Ct. at 1501; *see also United States v. Antonino*, 830 F.2d 798, 804 (7th Cir.1987); *United States v. Jones*, 808 F.2d 561, 567 (7th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1630, 95 L.Ed.2d 203 (1987).

■ *Due Process:* To establish a violation of due process from preindictment delay that would require dismissal of the federal indictments, Fuesting must show: (1) that the government delayed bringing the indictment in order to gain a tactical advantage; and (2) that the delay caused him actual and substantial prejudice. *United States v. Gouveia*, 467 U.S. 180, 192, 104 S.Ct. 2292, 2299, 81 L.Ed.2d 146 (1984); *Lovasco*, 431 U.S. at 790–96, 97 S.Ct. at 2048–52; *Antonino*, 830 F.2d at 804; *United States v. Wellman*, 830 F.2d 1453, 1460 (7th Cir.1987); *United States v. Perry*, 815 F.2d 1100, 1102–03 (7th Cir. 1987). We focus on the second element, as

we find it dispositive of Fuesting's due process claim.

■ The initial burden is on Fuesting to demonstrate actual and substantial prejudice. The allegations of prejudice must be specific, concrete and supported by the evidence—vague, speculative or conclusory allegations will not suffice. *Antonino*, 830 F.2d at 805; *United States v. Brown*, 742 F.2d 359, 362 (7th Cir.1984); *United States v. Jenkins*, 701 F.2d 850, 855 (10th Cir. 1983). Fuesting's mere recitation of the allegations set forth in *Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973) does not meet that burden. See note 4, *infra*.

*Moore* is factually distinguishable as a case involving post-indictment delay, in which the defendant had been charged almost three years before he was tried. 414 U.S. at 25, 94 S.Ct. at 188. Under such circumstances, whether the defendant is incarcerated or free on bail, an inordinate delay in bringing the defendant to trial may indeed "seriously interfere with the defendant's liberty, ... disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." *Marion*, 404 U.S. at 320, 92 S.Ct. at 463; *see also Moore*, 414 U.S. at 27, 94 S.Ct. at 190. Fuesting's challenge, however, is to the period between dismissal of the complaint and return of the indictment, during which there were no restraints on his liberty. "[H]is situation does not compare with that of a defendant who has been arrested and held to answer." *MacDonald*, 456 U.S. at 9, 102 S.Ct. at 1502; *see also Loud Hawk*, 474 U.S. at 311–12, 106 S.Ct. at 654; *Marion*, 404 U.S. at 309, 92 S.Ct. at 457. "Following dismissal of charges, any restraint on liberty, disruption of employment, strain on financial resources, and exposure to public obloquy, stress and anxiety is no greater than it is upon anyone openly subject to a criminal investigation." *MacDonald*, 456 U.S. at 9, 102 S.Ct. at 1502; *see also Loud Hawk*, 474 U.S. at 311–12, 106 S.Ct. at 654.

defendant's assertion of his right, and prejudice to the defendant." *Loud Hawk*, 474 U.S. at 313–14, 106 S.Ct. at 655 (quoting *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192).

Fuesting has thus failed to demonstrate sufficient prejudice resulting from the delay to warrant dismissal of the indictment. In the absence of such a showing, the government need not present evidence of the reason for the delay; and we need not balance the competing interests presented thereby. *Perry*, 815 F.2d at 1104; *United States v. Williams*, 738 F.2d 172, 175 (7th Cir.1984).

### B.

■ Fuesting also contends that the government's actions in delaying his indictment until depositions were taken in the civil forfeiture case constituted prosecutorial misconduct and harassment warranting dismissal of the indictments. This argument was raised for the first time on appeal, and while it is within our discretion to resolve such issues, our review is limited to the strict standards of the plain error doctrine of Fed.R.Crim.P. 52(b). *United States v. Whaley*, 830 F.2d 1469, 1476 (7th Cir.1987); *United States v. Sblendorio*, 830 F.2d 1382, 1396 (7th Cir.1987); *United States v. Lewis*, 797 F.2d 358, 369 (7th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1308, 94 L.Ed.2d 162 (1987). Under that doctrine, only an error which would result in "an actual miscarriage of justice" would support reversal of Fuesting's conviction. *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982); *see also United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985); *Whaley*, 830 F.2d at 1476; *Sblendorio*, 830 F.2d at 1396. In the present case, however, we find little basis for exercising the discretion with which we are empowered; for even if circumstances warranted our review, we would find Fuesting's argument to be without merit.

To support his claim of prosecutorial misconduct, Fuesting must present specific facts to raise a significant doubt about the propriety of the government's actions. *United States v. Swiatek*, 819 F.2d 721, 721 (7th Cir.1987). The fact that the government undertook discovery in the civil forfeiture action prior to presenting Fuesting's case to the grand jury does not raise such a doubt where, as here, the government had made it known prior to the scheduled taking of the depositions that it intended to further develop its criminal case against Fuesting for submission to the grand jury, and where Fuesting and his wife were represented by counsel throughout the civil and criminal proceedings.

### III. *The Motions to Suppress*

Fuesting next challenges the district court's evidentiary rulings with respect to the admission of evidence taken from both the marijuana field adjacent to the Fuesting home and from the home itself.

### A.

Fuesting originally moved to suppress evidence of marijuana taken from the field on the basis that he did not own the real property on which the field was located. The district court found, however, that ownership of the land on which the marijuana was grown was not a necessary prerequisite to a finding of guilt on charges of possession and manufacture of marijuana; that the question of whether there was sufficient evidence from which the jury could reasonably infer that Fuesting had dominion and control over the drug was a matter better left for trial; and that the motion to suppress should, therefore, be denied. Absent an abuse of discretion, those findings will not be disturbed. *Swiatek*, 819 F.2d at 726; *United States v. Harbour*, 809 F.2d 384, 387 (7th Cir.1987); *United States v. Covelli*, 738 F.2d 847, 854 (7th Cir.), *cert. denied*, 469 U.S. 867, 105 S.Ct. 211, 83 L.Ed.2d 141 (1984).

On appeal, Fuesting abandons his original claim and raises a new argument in support of suppression. He maintains that the observations of the police from the helicopter did not establish sufficient probable cause for police to land the helicopter, to search the marijuana field, or to seize evidence therefrom.

The government contends that Fuesting waived his argument when he failed to raise the issue at trial. Alternatively, it argues that Fuesting lacks the requisite

standing to challenge the search and seizure of property which he admittedly did not own.

While it is true that a litigant generally waives his right to argue on appeal an issue which was not raised at the trial court level, we have recognized that there are exceptional circumstances which demand more flexibility, and which warrant our consideration of newly raised arguments. *See Whaley,* 830 F.2d at 1475–76, and cases cited therein; *International Travelers Cheque Co. v. Bankamerica Corp.,* 660 F.2d 215, 225 (7th Cir.1981). As we have previously noted, however, our review in such cases is limited to the plain error doctrine of Rule 52(b) of the Federal Rules of Criminal Procedure. *Whaley,* 830 F.2d at 1476; *Sblendorio,* 830 F.2d at 1396. We find no such error in the present case.

■ It is well-established that "Fourth Amendment rights are personal rights which ... may not be vicariously asserted." *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 966–67, 22 L.Ed.2d 176 (1969). The burden was therefore on Fuesting, as the proponent of the motion to suppress, to establish a violation of *his own* fourth amendment rights by the challenged search and seizure. *Rakas v. Illinois,* 439 U.S. 128, 131 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978); *Simmons v. United States,* 390 U.S. 377, 389–90, 88 S.Ct. 967, 973–74, 19 L.Ed.2d 1247 (1968); *Jones v. United States,* 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697 (1960). To the extent Fuesting challenges the aerial and ground search of the marijuana field and the seizure of the crop growing thereon, he has failed to meet that burden. He at no time has asserted or admitted an ownership or possessory interest in either the field or the marijuana crop. Accordingly, for purposes of our review, we must assume that Fuesting had no such personal interest in the property. *See Rakas,* 439 U.S. at 130–31 n. 1, 99 S.Ct. at 424 n. 1. His claim for relief rests upon the legal rights and interests of an unidentified third-party, and not his own. "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed", and may not benefit from the protections afforded under the exclusionary rule. *Rakas,* 439 U.S. at 134, 99 S.Ct. at 427; *see also United States v. Payner,* 447 U.S. 727, 731–33, 100 S.Ct. 2439, 2444–45, 65 L.Ed.2d 468 (1980), *reh'g denied,* 448 U.S. 911, 101 S.Ct. 25, 65 L.Ed. 2d 1172 (1980); *Alderman,* 394 U.S. at 174, 89 S.Ct. at 966; *United States v. Chase,* 692 F.2d 69, 70 (9th Cir.1982).

### B.

Fuesting also challenges the district court's denial of his motion to suppress evidence taken from his home in a search which was conducted pursuant to a warrant on July 31, 1985. He contends: (1) that the detention of Mrs. Fuesting by police after she left the house constituted an unlawful arrest; (2) that his wife's statements during that detention were therefore illegally obtained; and (3) that any evidence seized pursuant to a search warrant which was issued at least partially on the basis of those statements was tainted. Fuesting further contends that the evidence seized was tainted and thus subject to suppression as a result of Officer Summerville's uninvited entry into the home. Finally, he argues that the observations made by the police during their aerial surveillance of his property did not establish probable cause for the issuance of the search warrant and the subsequent search of his home.

The district court found that Fuesting lacked standing to request suppression of evidence which may have been tainted by illegalities which infringed on a third-party's rights, namely his wife's. The court further found that Mrs. Fuesting's detention was not an arrest but rather an investigatory stop; and that even absent Mrs. Fuesting's statements to police, probable cause existed for the search given the observations of the officers in the helicopter. As we have previously noted, these findings will not be disturbed in the absence of an abuse of discretion on the part of the

district court. *Swiatek,* 819 F.2d at 726; *Harbour,* 809 F.2d at 387; *Covelli,* 738 F.2d at 854. We find that Fuesting has failed to demonstrate such an abuse.

■ To the extent Fuesting bases his motion to suppress on the allegedly illegal acts of the police in detaining and questioning Mrs. Fuesting, his arguments are without merit. In order to establish a substantive claim under the fourth amendment which would warrant suppression, Fuesting must establish a violation of his own fourth amendment rights. *Payner,* 447 U.S. at 731–33, 100 S.Ct. at 2444–45; *Rakas,* 439 U.S. at 134, 99 S.Ct. at 425; *Alderman,* 394 U.S. at 174, 89 S.Ct. at 967. The vicarious assertion of his wife's constitutional right to be free from unreasonable seizure does not suffice. *See Alderman,* 394 U.S. at 174, 89 S.Ct. at 967. It is therefore irrelevant for purposes of this appeal whether Mrs. Fuesting's detention constituted an arrest or a mere investigatory stop.

■ Fuesting also argues for suppression on the grounds that the evidence seized from his home was "tainted" by Officer Summerville's illegal entry into the home prior to the issuance of a search warrant. The district court found that there was no evidence to suggest that Officer Summerville's observations were used in either acquiring or executing the search warrant and that there was an independent source for the discovery of the evidence, namely, the observations of the helicopter team and the statements made by Mrs. Fuesting. Relying on *Segura v. United States,* 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), the court concluded that Officer Summerville's intrusion into the home was irrelevant in determining the validity of the subsequent search, which was conducted pursuant to a warrant, and that suppression of the evidence seized was unwarranted. We again concur with the district court.

Exclusion of the challenged evidence is not warranted "if the connection between the illegal police conduct and the discovery and seizure of the evidence is 'so attenuated as to dissipate the taint,' " *Segura,* 468

U.S. at 804–05, 104 S.Ct. at 3385, quoting *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939); *see also Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963), *i.e.,* where an independent source exists for the discovery of the evidence. *Segura,* 468 U.S. at 805, 104 S.Ct. at 3385; *Wong Sun,* 371 U.S. at 487, 83 S.Ct. at 417; *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920).

As in *Segura,* there is no evidence in the present case to suggest that the warrantless entry into the defendant's residence led to the discovery of the evidence seized under the warrant. *See Segura,* 468 U.S. at 814–15, 104 S.Ct. at 3390–91. The search warrant was obtained on information acquired by police well before Officer Summerville's entry into the Fuesting home, specifically information acquired from the observations of the helicopter team and from statements made by Mrs. Fuesting at the road-block. This information constituted a sufficient independent source for the discovery and seizure of the challenged evidence. The challenged evidence was thus acquired "by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun,* 371 U.S. at 488, 83 S.Ct. at 417, and was not subject to suppression. The legality of Officer Summerville's initial entry is therefore irrelevant. *Segura,* 468 U.S. at 814–15, 104 S.Ct. at 3390–91.

In his final argument, Fuesting challenges the existence of probable cause for the search based on observations made by police from the helicopter. As previously noted, this issue was raised for the first time on appeal. The government renews its waiver argument, and argues alternatively that the aerial surveillance was not violative of Fuesting's fourth amendment rights, citing *California v. Ciraolo,* 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986); and that probable cause did exist for the search. Under the circumstances, our review is limited to the plain error doctrine of Fed.R.Crim.Proc. 52(b). *Wha-*

*ley,* 830 F.2d at 1476; *Sblendorio,* 830 F.2d at 1396. We find no such error.

On appeal, Fuesting does not specifically challenge the constitutionality of the aerial surveillance. To do so, he would have to show that he had a "constitutionally protected reasonable expectation of privacy" in the area searched. *Katz v. United States,* 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). He had no such expectation in the open curtilage surrounding his home. *Ciraolo,* 106 S.Ct. at 1812–13; *see also Hester v. United States,* 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924).

■ Similarly, there is no merit to the claim that the aerial observations made by police were an insufficient basis for the issuance of the search warrant and the search itself. The warrant was not issued on the sole basis of those observations. Mrs. Fuesting's statements to police officers were also considered. As we have previously held, Fuesting may not request suppression of evidence which was allegedly tainted by illegalities infringing on the constitutional rights of a third-party. We will uphold a court's decision to issue a search warrant based on probable cause "so long as the [court] had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing...." *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983), quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960); *see also United States v. Griffin,* 827 F.2d 1108, 1111 (7th Cir.1987). Mrs. Fuesting's statements, together with the observations of police at the scene, provided the "substantial basis" required.

## IV. *Evidentiary Rulings*

■ Finally, Fuesting challenges certain evidentiary rulings made by the district court. At trial, Fuesting called to the stand the following witnesses: Jack Hightower, Ron Koester, Frank Kabbes, Robert Sperry and Joseph Esker. With the exception of Mr. Esker, each of the witnesses was called to testify as to Fuesting's finances prior to and at the time of his arrest. Mr. Esker was expected to testify with respect to whether Fuesting had a wall safe installed in his home. The government objected to the admission of this evidence on relevancy grounds. Fuesting's attorney made an offer of proof, and the district court thereafter found the testimony and exhibits, (i.e., tax returns, bank statements) irrelevant and inadmissible under Fed.R.Evid. 403.

Fuesting argues on appeal that the evidence should have been admitted under Fed.R.Evid. 401 and 402; that the government would have moved for its admission if it had "revealed large and out of the ordinary money transactions"; and that he should therefore be allowed to present the same evidence when it fails to show such transactions to demonstrate that he did not possess marijuana with the intent to manufacture and distribute it.

In reviewing Fuesting's contentions, we are mindful "that the district court has broad discretion to access the relevancy of proffered evidence." *United States v. West,* 670 F.2d 675, 682 (7th Cir.), *cert. denied,* 457 U.S. 1139, 102 S.Ct. 2972, 73 L.Ed.2d 1359 (1982). We will reverse a district court's evidentiary ruling only where there has been a clear abuse of that discretion. *Swiatek,* 819 F.2d at 726; *Covelli,* 738 F.2d at 854; *United States v. Wilkins,* 659 F.2d 769, 775 (7th Cir.), *cert. denied,* 454 U.S. 1102, 102 S.Ct. 681, 70 L.Ed.2d 646 (1981). We find that Fuesting has failed to meet the burden placed upon him, and concur with the district court in finding that Fuesting's financial transactions and general financial status were not relevant to whether Fuesting was in possession of, attempting to manufacture, or intending to distribute marijuana on July 31, 1985, the offenses with which he was charged.

## V. *Conclusion*

For the foregoing reasons, we now AFFIRM the judgment of the district court.