**UNITED STATES of America ex rel. Alfred BROWN, Petitioner,**

v.

**Linda DILLON, Respondent.**

No. 93 C 5402.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 27, 1994.

Alfred Brown, pro se.

Michael A. Hurst, Illinois Atty. General's Office, Chicago, IL, for Warden Dillon.

Terence Madsen, Illinois Atty. General's Office, Chicago, IL, for Atty. Gen. of the State of Ill.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

On September 2, 1993, Petitioner Alfred Brown filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("§ 2254"), seeking relief from his conviction in the Circuit Court of Cook County, Illinois. He claims four grounds for relief: (1) that he received ineffective assistance of counsel; (2) that he was mentally incapacitated at the time he pled; (3) that he did not receive a speedy trial; and (4) that he was arrested illegally.[1] For the reasons discussed below, we deny the Petitioner's writ.

### I. Background

On September 10, 1990, the Petitioner went on trial, charged with two counts of first degree murder and one count each of aggravated arson and arson. On September 13, in the middle of his trial, the Petitioner pled guilty to the charges. On October 17, the court sentenced him to natural life in prison. The Petitioner filed a timely appeal of his conviction and alleged that his plea was involuntary because he made it unknowingly. Specifically, he alleged that he failed to take

---

[1] We note that the Petitioner includes new grounds for relief in his reply brief. In his apparent conclusion and summary, he states: "Petitioner rights was violated under the U.S. Constitution ... Under the Fifth Amend, Violation of petitioner right to remain silence, equal protection under law and Due Process." We decline to address these new grounds for three reasons. First, the Petitioner waived his rights to them by neglecting to raise them, or anything akin to them, until he filed his reply brief. *See,* *e.g., Wilson v. Giesen,* 956 F.2d 738, 741 (7th Cir.1992); *Egert v. Conn. Gen. Life Ins. Co.,* 900 F.2d 1032 (7th Cir.1990). Second, the Petitioner presents the new grounds for relief in a wholly unsubstantiated and "off-hand" manner. *Smith v. Godinez,* 1993 WL 413962, *2, n. 2, 1993 U.S. Dist. Lexis 14566, *5, n. 2 (N.D.Ill. October 13, 1993). Third, our review of the record convinces us that, in any event, the new grounds have no merit.

his medication for one day, which caused "high blood pressure, blurry vision and a desire to 'charge energy level.'" *People v. Brown*, 239 Ill.App.3d 1077, 1079, 180 Ill.Dec. 945, 608 N.E.2d 67 (1st Dist.1992). On December 4, 1992, the appellate court denied the appeal. *Id.* at 1087, 180 Ill.Dec. 945, 608 N.E.2d 67. The Petitioner neither appealed that decision to the Illinois Supreme Court nor attempted to raise any other ground for relief within the state judiciary. He is now in the custody of Linda Dillon, Warden of the Menard Psychiatric Center in Menard, Illinois.

*II. Law*

Before seeking relief in federal court, a § 2254 petitioner must comply with various procedural requirements, one of which is to exhaust his state level remedies. This requirement has given rise to the so-called exhaustion doctrine. "The principle of comity ... underlies the ... doctrine," *Murray v. Carrier*, 477 U.S. 478, 489, 106 S.Ct. 2639, 2646, 91 L.Ed.2d 397 (1986); it ensures that the state courts have a "meaningful opportunity to evaluate" the petitioner's constitutional claims. *U.S. ex rel. Spurlark v. Wolff*, 699 F.2d 354, 361 (7th Cir.1983). Otherwise, "[f]or a federal district court to examine [the] claim[s] [would] undermine[ ] the relationship between state and federal courts and only serve[ ] to relegate state courts to the status of second class citizens in the task of protecting constitutional rights." *Id.*

If a petitioner fails to satisfy the exhaustion doctrine, he commits procedural default and waives his right to collateral review. "[A] state prisoner waives habeas review of a claim not only by failing to present it to the lower appellate court on direct appeal but also by failing to seek leave to present it to the highest court, having taken a direct appeal." *Nutall v. Greer*, 764 F.2d 462, 465 (7th Cir.1985); *see Spurlark*, 699 F.2d at 361.

There are, however, three exceptions to the rule that a petitioner who fails to satisfy the exhaustion doctrine commits procedural default. First, a petitioner can show " 'cause' for the default plus actual 'prejudice' result-

ing from it." *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir.), *reh'g denied*, (7th Cir. 1990), *and cert. denied*, 498 U.S. 1035, 111 S.Ct. 698, 112 L.Ed.2d 688 (1991) (quoting *Wainwright v. Sykes*, 433 U.S. 72, 90–91, 97 S.Ct. 2497, 2508–09, 53 L.Ed.2d 594 (1977)). "The *Wainwright* 'cause and prejudice' test is conjunctive: a petitioner's inability to demonstrate either prong results in dismissal of his habeas petition before the merits of his claims can be reached." *Buelow v. Dickey*, 847 F.2d 420, 425 (7th Cir.1988), *cert. denied*, 489 U.S. 1032, 109 S.Ct. 1168, 103 L.Ed.2d 227 (1989). Second, a petitioner can "treat[ ] counsel's failure to raise [his claim] properly as an independent Sixth Amendment violation under *Strickland*." *Rodriguez*, 906 F.2d at 1159; *see Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). The first two exceptions "overlap since deficient performance under *Strickland* constitutes cause for default, [citation omitted], and for many [petitioners] they tend to converge, because categories of *[Wainwright]* 'cause' apart from *Strickland* ineffectiveness are narrow instances and are rare." [2] *Id.* Third, a petitioner can " 'demonstrate that failure to consider [his] claims will result in a fundamental miscarriage of justice.' " *McGuire v. Farley*, 1994 WL 155266, *1, 1994 U.S.App. Lexis 9183, *4 (7th Cir. April 27, 1994) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991)). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for procedural default." *Murray*, 477 U.S. at 496, 106 S.Ct. at 2649.

The *Murray* Court limited the scope of the "cause and prejudice" and ineffective assistance of counsel exceptions. The Court "[thought] that the exhaustion doctrine ... generally requires that a claim of ineffective assistance [of counsel] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." 477 U.S. at 488–89, 106 S.Ct.

---

**2.** Because Petitioner Brown does not allege "cause" apart from *Strickland* ineffectiveness, we do not explore the "narrow" categories. *Cf. Rodriguez*, 906 F.2d at 1159, n. 1.

at 2646; *see Morrison v. Duckworth*, 898 F.2d 1298, 1300 (7th Cir.1990). The Court reasoned that "if a petitioner could raise his ineffective assistance claim for the first time on federal habeas in order to show cause for procedural default, the federal habeas court would find itself in the anomalous position of adjudicating an unexhausted constitutional claim for which state court review might still be available." *Id.*, 477 U.S. at 489, 106 S.Ct. at 2646.

The *Murray* Court's limitation is specifically applicable in Illinois because "[i]neffective assistance of appellate counsel is a claim which is cognizable under the Illinois Post–Conviction Hearing Act ("Act")," 725 ILCS 5/122–1. *U.S. ex rel. Landgham v. Welborn*, 1992 WL 368056, *3, 1992 U.S. Dist. Lexis 18166, *10 (N.D.Ill. November 25, 1992). In relevant part, the Act provides: "Any person imprisoned in the penitentiary who asserts that in the proceedings which resulted in his conviction there was substantial denial of rights under the Constitution of the United States or of the State of Illinois or both may institute a proceeding under this article."

The Seventh Circuit, however, created a loophole in the *Murray* Court's limitation. In *Harris v. DeRobertis*, 932 F.2d 619 (7th Cir.1991), the court "h[e]ld that a habeas claim will not be dismissed for failure to exhaust state remedies if a post-conviction petition would be untimely under [the Act] unless Illinois precedent indicates that petitioner could demonstrate lack of culpable negligence under § 122–1." *Id.* at 624, *see Landgham*, 1992 WL 368056, *4, 1992 U.S. Dist. Lexis 18166, *11–2. In relevant part, the Act provides:

> No proceedings ... shall be commenced more than 6 months after the denial of a petition for leave to appeal or the date for filing such a petition if none is filed ... or 3 years from the date of conviction, whichever is later, unless the petitioner alleges facts showing that the delay was not due to his culpable negligence.

725 ILCS 5/122–1. "The determination of freedom from culpable negligence is a question for the state courts to decide." *U.S. ex rel. Stevens v. Ragen*, 244 F.2d 420, 423 (7th Cir.), *cert. denied*, 355 U.S. 846, 78 S.Ct. 71, 2 L.Ed.2d 55 (1957).

## III. Discussion

### A. Dismissal

■ We decline to dismiss the Petitioner's habeas claim for failure to exhaust state remedies because it falls through the Seventh Circuit loophole in *Harris*, 932 F.2d at 624.

The Petitioner pled guilty on September 13, 1990, and the appellate court affirmed the plea on December 4, 1992, holding that the Petitioner was mentally competent. On September 2, 1993, the Petitioner filed this habeas petition, contending that he failed to appeal all possible grounds for relief to the appellate court and failed to plead any of those grounds to the Illinois Supreme Court because he had ineffective assistance of counsel.

Under the Act, the Petitioner could timely appeal on grounds of ineffective assistance of counsel until six months after the appellate court affirmed his plea on December 4, 1992, or three years after he pled on September 13, 1990, whichever is later. In this case, the later date is three years after he pled, which is September 13, 1993. The Petitioner filed his petition on September 2, 1993, eleven days before the Act's time bar fell. Because this ruling comes after the bar's fall, we consider whether the Petitioner "could demonstrate lack of culpable negligence under [the Act]." *Harris*, 932 F.2d at 624.

The Illinois cases "demonstrate that the culpable negligence standard is an exceptional means of relief which will be unavailable to virtually all petitioners." *Id.* at 623. In fact, "during the more than forty years since the provision was included, the Illinois courts have failed to produce even a single published opinion in which the court found a lack of culpable negligence." *Id.* at 622; *see People v. Bates*, 124 Ill.2d 81, 91, 124 Ill.Dec. 407, 529 N.E.2d 227 (1988) (Clark, J., dissenting) (stating that "the criteria necessary to show lack of 'culpable negligence' have been construed quite narrowly"). Two Illinois Supreme Court opinions convince us that the state would not reverse its trend in this case. First, in *People v. Montgomery*, 45 Ill.2d 94, 256 N.E.2d 802 (1970), the court held that,

even where its review of psychiatric reports "indicate[d] a condition of mental disturbance," there was "not . . . a sufficient showing that defendant's [untimeliness] was due to causes other than his culpable negligence." *Id.* at 96, 256 N.E.2d 802. Second, in *People v. Diefenbaugh,* 40 Ill.2d 73, 237 N.E.2d 512 (1968), the court held that, even where the court failed to respond to the defendant's repeated request for documents, there was insufficient basis to show that he was free from culpable negligence. *Id.* at 75, 237 N.E.2d 512.

The distinguishing features of the present case cut against the Petitioner and preclude finding him free of culpable negligence. Unlike the court in *Montgomery,* the court in this case did not find that the Petitioner had a severe or untreatable mental disturbance. Moreover, unlike the petitioner in *Montgomery,* the Petitioner in this case claims he was mentally incapacitated only for one day, the day of his plea. His alleged one day incompetency could have had no bearing on the timeliness of his seeking post-conviction relief. Unlike the court in *Diefenbaugh,* the court in this case did not receive any letters prompting it to act before September 13, 1993. Moreover, unlike the petitioner in *Diefenbaugh,* the Petitioner in this case did not seek post-conviction relief in a sufficiently timely manner such that he could reasonably expect the court to rule before the time bar fell.

We decline to dismiss the Petitioner's habeas claim for failure to exhaust state remedies because we find that the Petitioner is time barred under the Act and that the state courts would not find him free of culpable negligence.

### B. Exhaustion

On the other hand, we deny the Petitioner's habeas petition because he committed procedural default and waived his right to collateral review. Further, he cannot recover from the waiver by establishing cause [3] or fundamental miscarriage of justice.

---

**3.** We need not reach the issue of prejudice because the Petitioner cannot satisfy the first part of the conjunctive test.

### 1. Waiver

■ The Petitioner waived his right to collateral review because he failed to exhaust his state level remedies. The exhaustion doctrine requires petitioners to present their claims for relief to the lower appellate court on direct appeal and, subsequently, to seek leave to present those claims to the Illinois Supreme Court. *See Nutall,* 764 F.2d at 465; *Spurlark,* 699 F.2d at 361. The Petitioner presented only one claim for relief to the lower appellate court, and he presented none to the Illinois Supreme Court. Under *Nutall* and *Spurlark,* the petitioner waived habeas review.

### 2. Cause [4]

To avoid the waiver, the Petitioner claims to fall under the Sixth Amendment ineffective assistance of counsel exception. The standard for demonstrating ineffective assistance is well settled, and it is the same for trial and appellate counsels. *Buelow,* 847 F.2d at 426. With a trial counsel,

> [t]o have a viable claim of ineffective assistance . . . , a petitioner must satisfy a two-pronged 'cause' and 'prejudice' test by showing (1) his counsel's performance was so deficient as to be objectively unreasonable; and (2) that 'there is a reasonable probability that, but for the counsel's unprofessional error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'

*Ellzey v. Detella,* 1994 WL 395153, *3, 1994 U.S. Dist. Lexis 10234, *7 (N.D.Ill. July 26, 1994) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068). Similarly, with an appellate counsel, a petitioner "is required to show: (1) that his counsel's appellate performance fell below an objective standard of reasonableness, and (2) that counsel's deficiencies prejudiced the result of the appeal." *Freeman v. Lane,* 962 F.2d 1252, 1257 (7th Cir.1992).

---

**4.** The *Strickland* and *Wainwright* "cause" analyses converge because the Petitioner alleges no "cause" beyond *Strickland* ineffectiveness. *See Rodriguez,* 906 F.2d at 1159.

Falling under the Sixth Amendment exception is difficult because only a narrow range of attorney performance establishes cause. "[T]he Supreme Court has explicitly rejected the position that an attorney's ignorance or inadvertence can be sufficient cause for procedural default." *Buelow*, 847 F.2d at 426; *see Murray*, 477 U.S. at 486–87, 106 S.Ct. at 2644. "Simply showing that a motion that might have been brought wasn't, does not by itself demonstrate cause for procedural default." *Rodriguez*, 906 F.2d at 1160. "It is not necessary that attorneys pursue every conceivable avenue on appeal." *Ellzey*, 1994 WL 395153, *3, 1994 U.S. Dist. Lexis 10234, *7. In particular, "[i]t [is] not [necessary for them] . . . to raise [a] meritless issue on appeal." *Ramos v. U.S.*, 1994 WL 162801, *7, 1994 U.S. Dist. Lexis 5327, *23 (N.D.Ill. April 22, 1994). The Petitioner must demonstrate that the "counsel failed to present significant and obvious issues on appeal." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985); *see Kurina v. Thieret*, 853 F.2d 1409, 1417 (7th Cir.1988), *cert. denied*, 489 U.S. 1085, 109 S.Ct. 1544, 103 L.Ed.2d 848 (1989). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* "Because of the difficulties of assessing counsel's work with hindsight, . . . 'judicial scrutiny of counsel's performance must be highly deferential.'" *Ellzey*, 1994 WL 395153, *3, 1994 U.S. Dist. Lexis 10234, *7 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065).

The Petitioner presents several arguments to support his Sixth Amendment claim. He offers three arguments about his trial counsel, that the counsel: (1) told him to plead guilty when he had no desire to do so; (2) advised him that he would lose the trial and perhaps receive the death penalty; and (3) failed to explain to him his rights. He offers one argument about his appellate counsel, that he directed the counsel to raise and appeal all issues, and that the counsel did not follow his directions. Similarly, he argues that the counsel used constitutionally deficient strategies when the counsel wrongfully neglected to raise and preserve the issues.

■ The Petitioner's arguments about the ineffectiveness of his trial counsel fail to establish cause. We are particularly skeptical of the arguments because at trial, when the judge asked the Petitioner if he was "satisfied with the professional services [he] received from the Cook County Public Defenders Office," he responded, "Yes, I am." Tr. at 457. Below, however, we consider each of his three arguments.

First, the Petitioner argues that his counsel told him to plead guilty when he had no desire to do so. In the record, however, the counsel, Mr. Grzeca, said:

"I . . . advised him today when he confronted me with his request to enter a plea of guilty, that it was against my advise. I am prepared to finish his trial, I'm prepared to take whatever steps are necessary to ensure [the Petitioner] an adequate defense in this matter, and his request to enter a guilty plea, which was brought to me today, is over my advise and the advise of Mr. Jordan, who is also co-counsel in this matter."

Tr. at 456. At the close of Mr. Grzeca's statement, the counsel asked the Petitioner, "are you still wishing to plead guilty at this time?" Tr. at 457. The Petitioner responded, "Yes, I am." Tr. at 457. Contrary to the Petitioner's argument, the record shows that the counsel advised against pleading guilty. It further shows that the Petitioner had a desire to plead guilty.

Second, the Petitioner argues that the counsel advised him that he would lose the trial and admonished him that, if he lost, he might receive the death penalty. In the record, however, after the Petitioner apparently told Mr. Grzeca that he wished to plead guilty, the counsel said: "I explained to [the Petitioner] our entire trial strategy, and our willingness and our advise to go ahead with this trial." Tr. at 456–7. The counsel further said: "I explained every possible sentence, every possible sentence that he could receive by your Honor after a plea of guilty." Tr. at 456. The record indicates that: "[If] a person . . . is found guilty of first degree murder of more than one victim, the Court shall sentence [him] to a term of natural life imprisonment, or may sentence the defen-

dant to death." Tr. at 449. Contrary to the Petitioner's argument, the record shows that the counsel advised continuing the fight, presumably because the counsel believed the trial winnable. It further shows that the counsel's admonishment concerning the death penalty was accurate and appropriate.

Third, the Petitioner argues that the counsel failed to explain to him his rights. In the record, however, the counsel said: "I have advised [the Petitioner] throughout my handling of this case on every possible option available to him." Tr. at 456. Moreover, the judge reviewed with the Petitioner his rights and those that he would waive if he pled guilty. Tr. at 449–53. Contrary to the Petitioner's vague argument, the record shows that the counsel and judge explained to him all pertinent rights. In any event, nothing in the record suggests otherwise.

The Petitioner's argument about the ineffectiveness of his appellate counsel fails to establish cause. He argues that he directed the counsel to appeal all issues, and that the counsel did not follow his directions. He names three issues he believes the counsel should have appealed all the way to the Illinois Supreme Court: (1) unlawful arrest; (2) speedy trial; and (3) mental incompetency. Below, we consider each of the three issues.

■ First, the Petitioner argues that the police arrested him illegally, without probable cause. He argues that the arrest was illegal because he violated no law, and there was no probable cause because he fit no witness description and made no self-implicating actions. Based on these allegations,

the Petitioner moved to suppress evidence before trial, which motion the trial court rejected, noting that "nothing had occurred at the suppression hearing that was beneficial to the [Petitioner's] case." *Brown*, 239 Ill.App.3d at 1079, 180 Ill.Dec. 945, 608 N.E.2d 67. Contrary to the Petitioner's argument, the record shows that the police did not initially arrest him; he voluntarily accompanied the police to area headquarters and voluntarily answered their questions. Tr. at 227–8, 231. Further, the record shows that the police had probable cause for his arrest; he fit a witness' description, Tr. at 233, and made self-implicating actions, Tr. at 305. Further still, the record shows that, only after establishing the above did the police arrest him, administer his *Miranda* warnings, and take his confession. Tr. at 309, 387–8. Therefore, it was not objectively unreasonable for the Petitioner's counsel to not raise the Fourth Amendment issue and reject his argument to establish cause.[5]

■ Second, the Petitioner argues that the prosecutors did not grant him a speedy trial and, as a result, he lost contact with three witnesses who could have established his alibi. Contrary to the Petitioner's argument, the record does not indicate that he or his counsel had any difficulty finding witnesses, and the Petitioner now supplements the record with evidence insufficient to establish grounds for prejudice. "The initial burden is on [the Petitioner] to demonstrate actual and substantial prejudice." *U.S. v. Fuesting*, 845 F.2d 664, 669 (7th Cir.1988). "[A]llegations of prejudice must be 'specific, concrete, and supported by evidence—vague, speculative,

---

5. If the Petitioner succeeded in establishing "cause," he would face another, insurmountable procedural hurdle. In *Stone v. Powell*, 428 U.S. 465 [96 S.Ct. 3037, 49 L.Ed.2d 1067] (1976), the Supreme Court drastically limited the ability of petitioners to obtain habeas relief based on their Fourth Amendment claims. "[W]here the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Id.* at 494 [96 S.Ct. at 3052]. Where, as here, the Petitioner "does not object to the state court procedures[, but] rather ... insists that both the trial court and [state] Supreme Court erred in their interpretation of the Fourth

Amendment[,] [i]t is precisely this type of reconsideration that *Stone* ... precludes." *Sanders v. Israel*, 717 F.2d 422, 424 (7th Cir.1983), *cert. denied*, 465 U.S. 1033 [104 S.Ct. 1302, 79 L.Ed.2d 701] (1984). Moreover, in *Sanders*, this Circuit further limited the ability of petitioners to obtain habeas relief based on their Fourth Amendment claims. "An illegal arrest ... is an insufficient ground, standing alone, upon which to vacate a conviction in federal habeas proceedings." *Id.* at 423; *see U.S. ex rel. Moore v. Godinez*, [1993 WL 311918, *4] 1993 U.S. Dist. Lexis 11101, *8 (N.D.Ill. August 10, 1993). We find no distinction between a Fourth Amendment claim "standing alone" and such a claim standing among others, all of them meritless. *Sanders*, 717 F.2d at 423.

or conclusory allegations will not suffice.'" *Pharm v. Hatcher*, 984 F.2d 783, 787, *reh'g denied* (7th Cir.1993), *and cert. denied*, — U.S. —, 114 S.Ct. 125, 126 L.Ed.2d 89 (1993) (quoting *Fuesting*, 845 F.2d at 669). "In these lost witness cases, we require proof that the witness would have testified and withstood cross examination and that the jury would have found the witness credible." *Id.* The Petitioner fails to carry his burden because his argument is speculative and conclusory and provides no proof that the witnesses would have provided strong, credible testimony. Therefore, it was not objectively unreasonable for the Petitioner's counsel to not raise the speedy trial issue and reject his argument to establish cause.

■ Third, the Petitioner argues that the judge should not have taken his plea because (1) he did not receive a psychiatric evaluation and, (2) on the day that he pled, he neglected to take his medication and became temporarily mentally incompetent. Contrary to the Petitioner's argument, the record indicates that the Petitioner received several psychiatric evaluations. Both parties "stipulated ... that the [Petitioner] was examined three times [by the] Psychiatric Institute by three different doctors. He was found sane at the time of the offense ... and fit to stand trial." Tr. at 495. The Petitioner was "never ... found unfit," although the psychiatric report on the day of trial indicated that the Petitioner was "fit to stand trial with medication." *Brown*, 239 Ill.App.3d at 1083, 180 Ill.Dec. 945, 608 N.E.2d 67. However, "there was [no] psychiatric testimony that [the Petitioner's] fitness for trial could only be maintained by continued use of prescribed medication." *Id.* Given the record, we would be surprised if there had been such testimony. The defense counsel provided no grounds for concern over the defendant's fitness. The trial court, which had "extensive opportunities to observe the [Petitioner]," provided no grounds. *Id.* at 1086, 180 Ill.Dec. 945, 608 N.E.2d 67. And after reviewing the entire record, the appellate court found no grounds, either.

The Petitioner's argument about neglecting to take his medication would perhaps carry weight, but the record undermines its

importance. It indicates that the Petitioner thought clearly and acted knowingly during his plea. At one point, the judge explained to the Petitioner his rights and asked him if he understood them. Tr. at 449–52. The Petitioner said he did, except with regard to one right. The judge re-explained that right, and after the re-explanation, the Petitioner said he understood it. Tr. at 451–2. This interchange shows that the Petitioner was sufficiently lucid to know what he did not understand and confident enough to request a re-explanation. Further, the record indicates that the Petitioner knew the importance of his actions. He requested from the judge permission to spend time with his family before he entered his plea. Tr. at 445, 447. Further still, the record indicates that the judge made a specific finding that the Petitioner was competent at the time of his plea. Therefore, because the record so strongly indicates that the Petitioner was competent at the time he pled, we find that it was not objectively unreasonable for his counsel to not seek leave to appeal the mental incompetency issue all the way to the Illinois Supreme Court and we reject his argument to establish cause.

Because none of the Petitioner's arguments are sufficient to establish cause, we find that he cannot satisfy the "cause and prejudice" exception to the exhaustion doctrine.

### 3. Fundamental Justice

Although the Petitioner does not argue that his incarceration results from a fundamental miscarriage of justice, such an argument is inherent to his petition, and we consider it. There is nothing in the record, however, that leads us to believe that the Petitioner is "actually innocent" or that this is an "extraordinary case." *Murray*, 477 U.S. at 496, 106 S.Ct. at 2649. Therefore, we find that the Petitioner cannot satisfy the fundamental miscarriage of justice exception to the exhaustion doctrine.

### IV. Conclusion

Because Petitioner Brown procedurally defaulted and cannot satisfy the "cause and prejudice" or fundamental miscarriage of jus-

tice exceptions to the exhaustion doctrine, we deny his writ of habeas corpus.[6]

---

**6.** The Petitioner's request for a court-appointed lawyer is moot because of today's ruling.