UNITED STATES of America ex rel.
Francis A. MITCHELL,
Petitioner-Appellant,

v.

James W. FAIRMAN, Warden,
Respondent-Appellee.

No. 83–3031.

United States Court of Appeals,
Seventh Circuit.

Argued May 29, 1984.

Decided Dec. 12, 1984.

James I. Kaplan, Mayer, Brown & Platt, Chicago, Ill., for petitioner-appellant.

Marcia L. Friedl, Asst. Atty. Gen., Chicago, Ill., for respondent-appellee.

Before POSNER and FLAUM, Circuit Judges, and CAMPBELL, Senior District Judge.*

POSNER, Circuit Judge.

 The petitioner-appellant, Francis Mitchell, was found guilty of murder by an Illinois state court in 1979 and was sentenced to a long term of imprisonment. After exhausting his state remedies, see *People v. Mitchell,* 95 Ill.App.3d 779, 51 Ill.Dec. 1, 420 N.E.2d 415 (1981), he brought this action for habeas corpus in federal court, and he appeals from the district court's denial of his petition. The only question he argues in his appeal brief is whether Illinois denied him his constitutional right to a speedy trial. *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). In a footnote in the brief, Mitchell's lawyers attempt to reserve "all legal contentions and grounds advanced in support of issuance of the writ of habeas corpus in the District Court, both by himself (*pro se*) and by appointed counsel." This is unacceptable; grounds raised but not argued on appeal are waived. See, e.g., *Hershinow v. Bonamarte,* 735 F.2d 264, 266 (7th Cir.1984).

* Hon. William J. Campbell, of the Northern District of Illinois, sitting by designation.

Mitchell was first arrested in Illinois in June 1973 on suspicion of the murder (committed earlier that month) for which he was eventually convicted. But he was also "wanted" in Florida; and in August 1973, an Illinois grand jury returned a no bill against Mitchell and at the same time the State of Florida lodged a detainer against him in connection with an alleged battery in Florida that had taken place shortly after the murder. Mitchell, who had been in jail since his arrest, was handed over to the Florida authorities, was tried and convicted in Florida in 1974, and was sentenced to three years in prison. While he was serving this sentence in Florida, a grand jury in Illinois in December 1974 indicted him for murder. After waiving extradition in March 1975, he was transferred to a jail in Chicago and arraigned in May 1975. At this time he made several discovery requests of the state that were not complied with till the end of 1976. In January 1977 he successfully moved to suppress evidence that had been seized in a search of his home, and he was released from jail on bond. But the state appealed, and in May 1978 the Illinois Appellate Court reversed the suppression order. *People v. Mitchell,* 61 Ill.App.3d 99, 18 Ill.Dec. 437, 377 N.E.2d 1073 (1978). In October 1978 the Illinois Supreme Court denied leave to appeal the Illinois Appellate Court's decision to it, and Mitchell was finally tried in June 1979.

 The Supreme Court has told us that to determine whether the constitutional right to a speedy trial has been violated, we should consider (1) the length of, and (2) the reason for, the delay in trying the defendant (Was it deliberate on the government's part? Did the defendant want the delay?); (3) the harm caused to the defendant ("lengthy incarceration prior to trial, ... the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and ... the disruption of life caused by arrest and the presence of unresolved criminal charges," *United States v. MacDonald,* 456 U.S. 1, 8,

102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982)); and (4), as indicating the reasons for delay and the extent of harm to the defendant, the frequency and forcefulness of the defendant's demand for trial. *Barker v. Wingo*, 407 U.S. 514, 530–33, 92 S.Ct. 2182, 2191–93, 33 L.Ed.2d 101 (1972).

■ Thus, the longer the delay and the more vigorous the defendant's demand to be tried speedily, the more reason the state must show for the delay and the less harm (of whatever type) to himself the defendant need show. If this seems a rather spongy formula (the Supreme Court in *Barker* described the constitutional right to a speedy trial as "amorphous," "vague," and "slippery," 407 U.S. at 521–22, 92 S.Ct. at 2187), and one undoubtedly generous to the state, we must bear in mind that delay frequently favors criminal defendants rather than prosecutors. See *id.* at 521, 92 S.Ct. at 2187. Too rigid a right to a speedy trial would enable many defendants to escape conviction who had not been harmed at all—had actually been helped—by the delay in bringing them to trial. It seems odd, though, that impairing the defendant's ability to mount an effective defense is not on the list in *MacDonald* of the elements of harm to the defendant from delay of trial. Although in *Barker* it had been considered the most important factor bearing on harm to the defendant, see 407 U.S. at 532, 92 S.Ct. at 2193, in *MacDonald* it was said to be "protected primarily by the Due Process Clause and by statutes of limitations," 456 U.S. at 8, 102 S.Ct. at 1502. But in the word "primarily" (also found in the statement in the opinion that "the Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time," *id.*) may be found some basis for continuing to regard such prejudice as bearing on a defendant's right to a speedy trial. And if not, it hardly matters; we would simply construe Mitchell's complaint as encompassing a claim that the delay in bringing him to trial violated the due process clause by interfering with his ability to defend himself against the state's charges.

■ Six years elapsed between Mitchell's arrest and his trial, but this includes 16 months between the time when a grand jury in Illinois returned a "no bill" against him and the time when another grand jury in Illinois indicted him. This interval, during which no charges were pending against Mitchell in Illinois, does not count for purposes of determining whether Mitchell's right to a speedy trial was infringed. See *United States v. MacDonald, supra,* 456 U.S. at 7, 102 S.Ct. at 1501. Most people against whom charges are not pending do not want a speedy—or any—trial. It is true that when the Illinois charges against Mitchell were dropped he was "released" into custody in Florida, but that does not change the principle. "[A]n arrest or indictment by one sovereign [Florida] would not cause the speedy trial guarantees to become engaged as to possible subsequent indictments by another sovereign [Illinois]." *Id.* at 10 n. 11, 102 S.Ct. at 1503 n. 11.

■ That still leaves, however, more than four and a half years during which the constitutional guarantee of a speedy trial was applicable to Mitchell (June-August 1973, December 1974-June 1979), and that is an awfully long time without a trial—more than enough to require us to look closely at the reasons for the delay, and the harm to the defendant. See *Barker v. Wingo, supra,* 407 U.S. at 530, 92 S.Ct. at 2192 ("The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."); *United States ex rel. Fitzgerald v. Jordan,* 747 F.2d 1120, 1127 (7th Cir.1984); *Terry v. Duckworth,* 715 F.2d 1217, 1219 (7th Cir.1983). Much of that lengthy period, however, was consumed in the disposition of various motions filed by Mitchell. This includes 22 months related to his motion to suppress and a total of 8 months of (prompt) adjudication of a variety of other motions filed by him.

■ Although 22 months to adjudicate a motion to suppress are a lot, we cannot

ascribe fault to the state. The trial court granted Mitchell's motion and the state had every right to appeal. Since the state won the appeal, it is pretty obvious (and anyway not contested) that the appeal was not taken just for purposes of delay. See *United States ex rel. Fitzgerald v. Jordan, supra,* at 1128–1129. And Mitchell has been unable to show that the Illinois court system processed his motion with unreasonable delay; it is sad but true that the modern appellate process often works slowly. Although the state took 7½ months to file its appeal brief, only some six weeks of this period were due to an extension of time sought by the state; and Mitchell himself got a four-week extension of time in which to file his appeal brief. Moreover, five of the 22 months were consumed by Mitchell's unsuccessful effort to appeal from the Illinois Appellate Court to the Illinois Supreme Court.

This leaves, though, more than two years of unexplained delay (consisting mainly of the period during which Mitchell's discovery requests were being ignored by the prosecutor); and we may assume that it throughout this period Mitchell had been clamoring for a trial, or if the delay had made it hard for him to put on a defense to the very grave charges against him, this length of unjustified—indeed, completely unexplained—delay would violate his constitutional right to a speedy trial. But neither condition is satisfied here. Mitchell first asked for a trial when he waived extradition, in March 1975, but he expressed no desire for a prompt trial. A pro forma demand for trial, made merely in order to indicate that the defendant does not intend to waive his constitutional right to a trial, is entitled to no weight in the decision whether the defendant's right to a speedy trial has been violated. Cf. *United States v. Jackson,* 508 F.2d 1001, 1004 (7th Cir.1975). Mitchell again demanded trial in June 1976 (shortly after moving for the first time to dismiss the case on speedy-trial grounds), and again in October 1976 after having consented to thirteen continuances. This was his last demand for trial

until he filed his motion to dismiss the charges against him on speedy-trial grounds, shortly before the trial finally took place. At no point did he press hard for an early trial. His filing of a motion to dismiss the charges on speedy-trial grounds three years before his trial was only weak evidence that he wanted a speedy trial; it could equally well have meant simply that he saw a way to get the case dismissed on the basis of previous delay. In addition to consenting to many continuances, he made no effort during the long interval when his request for discovery was pending in the state's attorney's office to obtain a discovery order that would have accelerated the state's response.

The district judge found that Mitchell suffered no serious harm from the delay. This finding may seem surprising since Mitchell was in jail awaiting trial for much of the period between his discharge from his Florida sentence in April 1976 and his trial more than three years later. We do not know how long he was actually in jail. We know he was released when the state trial court granted his motion to suppress, but do not know when he was returned to jail. But since, while he was out, he was still on bond, which imposed constraints on his freedom that constitute one of the harms from delay identified in *MacDonald,* a more important point is that neither in the district court (where Mitchell was also represented by counsel) nor in this court has Mitchell pointed to his pretrial incarceration as a significant harm to him from the delay in bringing him to trial. Nor was Mitchell's defense harmed by the delay. Although a witness died in the interim, which in other circumstances could of course be a serious detriment to a criminal defendant, there is no indication that this witness would have testified favorably to Mitchell. After killing his (former) mother-in-law in Illinois (the murder for which he was convicted in Illinois), Mitchell had flown down to Florida and there attacked his former wife and her father (the murder victim's husband) with a hammer. The fa-

ther is the prospective witness who died before Mitchell was brought to trial in Illinois. It is not surprising that Mitchell does not even mention this witness in his appeal briefs.

Although the delay in bringing Mitchell to trial was deplorable, there is no per se rule of constitutional law that requires the states to bring their criminal defendants to trial within a fixed time failing which charges must be dropped. If the defendant is at least reasonably content with a leisurely prosecution, as Mitchell seems to have been, and he suffers no demonstrable harm from delay, then, having due regard for the importance to the public safety of not lightly upsetting the conviction of a man clearly guilty of a heinous crime, we conclude that even an unexplained two-year delay does not violate the constitutional right to a speedy trial. We add that although no two speedy-trial cases are exactly alike, Mitchell's claim is on balance no stronger than that of the defendant in *Barker v. Wingo*. There (see 407 U.S. at 533–36, 92 S.Ct. at 2193–94) the unexcused delay was more than four years—roughly twice as long as in the present case—and Barker's freedom was restrained for the whole period, though he was in jail for "only" 10 months (and out on bond for the rest). As here, there was no significant harm to the defense. It is true that Barker made even less effort than Mitchell to advance his trial, but this difference would seem to be offset by the much greater delay in *Barker* than in the present case. Barker's speedy-trial claim failed.

AFFIRMED.