51 F.3d 275
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Donnie Lee JACKSON, Petitioner-Appellant,
v.
Jack R. DUCKWORTH and Indiana Attorney General, Respondents-Appellees.
 No. 93-2773.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 24, 1995.*
Decided March 22, 1995.
Rehearing Denied April 19, 1995.
 
 Before POSNER, Chief Judge, and FAIRCHILD and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Donnie Lee Jackson, currently incarcerated at the Wabash Valley Correctional Institute in Indiana, appeals the district court's denial of his petition for a writ of habeas corpus. 28 U.S.C. Sec. 2254. Jackson was convicted of burglary and the attempted murder of the occupant of the burglarized residence. In his petition, he alleges that the state trial court violated his federal constitutional right to a speedy trial under the Sixth and Fourteenth Amendments because his trial did not begin until fifteen months after he was charged. We affirm.
 
 
 2
 As a preliminary matter, we note that there is some question as to whether Jackson has exhausted his state remedies as is ordinarily required before we will address a habeas petitioner's constitutional claim. 28 U.S.C. Secs. 2254(b)-(c); see also Jones v. Washington, 15 F.3d 671, 674 (7th Cir.), cert. denied, 114 S.Ct. 2753 (1994). On direct appeal from his state conviction, Jackson alleged that his right to a speedy trial under Indiana's Rule of Criminal Procedure 4(b) was violated; however, he did not fairly present his Sixth and Fourteenth Amendment claims to the state appellate court. Verdin v. O'Leary, 972 F.2d 1467, 1474 (7th Cir.1992) (both the operative facts and the controlling legal principles must be submitted to the state court). Moreover, Jackson has not filed a petition for post-conviction relief in Indiana even though such a proceeding may be instituted at any time, Indiana Rules of Procedure for Post-Conviction Remedies 1, Sec. 1(a), and is open to the raising of issues that were either not available or not known to the petitioner at the time of the direct appeal. Lowery v. State, 640 N.E.2d 1031, 1036 (Ind.1994).
 
 
 3
 Although the respondents contend that Jackson procedurally defaulted his speedy trial claim by failing to raise it on direct appeal, the federal district court declined to base its decision on procedural default or exhaustion of remedies and instead addressed the merits of Jackson's speedy trial claim. Ordinarily, the interests of comity and judicial efficiency may be better served by insisting on complete exhaustion before a claim may be reviewed in a federal habeas corpus proceeding; however, where the petitioner does not raise even a colorable federal claim, we may dismiss the petition on the merits. Granberry v. Greer, 481 U.S. 129, 135 (1987). Because we find no merit to Jackson's claim, we rely on Granberry to affirm the district court's denial of the petition.
 
 
 4
 Jackson was charged on July 28, 1988 and was to be tried jointly with co-defendant Henry Bates on December 13. At the end of October or the beginning of November, Bates orally requested a continuance. Notice was given to Jackson's attorney who did not object to the delay. On January 30, 1989, Jackson filed a pro se motion to dismiss, alleging a speedy trial violation. The court refused to consider the motion because Jackson was represented by counsel. A new trial date was eventually set for July 11, 1989. On June 22 and 23, Jackson moved the court to suppress certain statements and to sever the trial. Shortly thereafter, Bates moved for a second continuance which the court granted, pushing back the trial date to September 19, 1989. The motions to suppress and to sever the trials were denied on August 1 and September 5, respectively. On September 11, Bates filed a notice of alibi upon which the state requested a continuance to investigate. The final trial date was set for October 24. The trials were severed on October 10 in response to Bates' motion. Although Jackson moved for a continuance on the eve of trial, the court denied the motion and the trial began on October 24.
 
 
 5
 The factors to be considered in determining whether the defendant's right to a speedy trial has been violated include the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. Doggett v. United States, 112 S.Ct. 2686, 2690-93 (1992); Barker v. Wingo, 407 U.S. 514, 530 (1972). None of the factors are conclusive; rather, a court must weigh them all in a "difficult and sensitive balancing process." Barker, 407 U.S. at 533.
 
 
 6
 The length of delay is partly a "triggering mechanism" in that without at least some delay raising a presumption of prejudice, there is no need to consider the remaining factors. Id. at 530. The length of delay that will compel further inquiry is dependent upon the circumstances of the case and in particular, the seriousness of the crime with which the defendant is charged. United States v. Koller, 956 F.2d 1408, 1413 (7th Cir.1992). We have held that a delay of 8 months is sufficient to warrant further discussion of a speedy trial claim where the defendant was charged with attempted murder and armed robbery. United States ex rel. Fitzgerald v. Jordan 747 F.2d 1120, 1127 (7th Cir.1984), cert. denied, 471 U.S. 1056 (1985). Accordingly, a fifteen month delay in this case necessitates further inquiry into Jackson's claim.
 
 
 7
 Jackson's claim is weakened because of his own responsibility for the delay in the start of the trial. Although he did not personally move for a continuance in the fall of 1988, he did not object to the request or move to sever his trial.[1] Furthermore, Jackson's own motions to suppress and for severance filed in June 1989 pushed back the trial date another two months.
 
 
 8
 In addition, Jackson has not alleged that the delay caused by his co-defendant and the government was unreasonable. Barker states that "different weights should be assigned to different reasons" for the delay. 407 U.S. at 531. For example, delays caused by the government's negligence or bad faith are weighed more heavily in favor of the defendant than those delays caused by the disappearance of a government witness. Id. Here, the only delay by the government may be reasonably explained by co-defendant Bates' late filing of the notice of alibi. Furthermore, there is no indication that the co-defendant filed his motions or made his requests in bad faith. These facts convince us that even that delay which is not directly attributable to Jackson does not weigh in favor of finding a speedy trial violation. Cf. United States v. Baker, 40 F.3d 154, 159 (7th Cir.1994) (Under the Speedy Trial Act, 18 U.S.C. Secs. 3161-3174, actions of a co-defendant which delay a trial may be attributed to the defendant), petition for cert. filed (U.S. Feb. 6, 1995) (No. 94-8001); United States v. Tanner, 941 F.2d 574, 580 (7th Cir.1991) (same), cert. denied, 502 U.S. 1102 (1992).
 
 
 9
 As to the third factor, the petitioner's assertion of his right to a speedy trial, we find that despite Jackson's filing of a motion to dismiss for an alleged speedy trial violation, his motion for a continuance the eve before the trial clearly indicates that he was not as anxious to be tried as he has claimed to be.
 
 
 10
 Jackson's claim is further weakened by his failure to make an adequate showing of prejudice. The right to a speedy trial is meant to protect against three types of harm: oppressive pretrial incarceration, the anxiety and concern of the accused, and the possibility that the defense will be impaired. Barker, 407 U.S. at 532. Of these three, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Id. In Doggett v. United States, the Supreme Court noted that a showing of particularized prejudice is not essential to every speedy trial claim; rather, the level of specificity required may be less where the other Barker factors, notably the length of delay, weigh heavily in the defendant's favor. 112 S.Ct. at 2692-2694.
 
 
 11
 Jackson claims all three types of prejudice. First, Jackson contends that he lost contact with a potential witness, Alan Redd, because of the delay. In his pleadings before the district court, Jackson stated that Redd would have testified that Redd, Jackson, and Bates were together the night of the crime, that Redd and Jackson parted company with Bates, and that a few hours later they met up with Bates again. Redd would further testify that it was at this second meeting that Redd and Jackson first learned of the completed crimes and that they then helped Bates transfer the stolen merchandise to Jackson's residence. Given the defense theory pursued by Jackson at trial, we fail to understand how the testimony of this witness would have been relevant and find no prejudice.
 
 
 12
 At trial, the defense admitted that Jackson committed the burglary with Bates but argued that Jackson lacked the necessary intent to commit murder because he urged Bates to leave the burglarized house once they discovered that someone was asleep in the bedroom. (Trial Tr. 350-52, 576). Although Jackson did not testify, a statement made by him to the police acknowledging his presence at the crime scene was admitted as an exhibit. (Trial Tr. 350, 499, 566-71). Because the record indicates that Jackson never denied that he was involved in the burglary, the loss of a witness who would allegedly testify to his non-involvement, an entirely different defense theory than the one presented, does not establish prejudice.
 
 
 13
 Next, Jackson argues that his anxiety and concern resulting from the burglary and murder charges caused his health to deteriorate to the point that he developed an acute ulcer. Jackson has not provided the court with any medical evidence to verify his physical condition, and general allegations of anxiety and concern in anticipation of trial ordinarily do not constitute sufficient evidence of prejudice where the other Barker factors do not weigh in the defendant's favor. United States v. Jackson, 542 F.2d 403, 409 (7th Cir.1976); United States v. Jackson, 508 F.2d 1001, 1004 (7th Cir.1975).
 
 
 14
 Nor are we convinced by his claims of oppressive incarceration. While awaiting trial on the burglary and murder charges, Jackson was incarcerated at the Westville Correctional Center for another crime. He alleges that after his arraignment, he was placed in a higher security section of the prison with no opportunity to participate in educational or vocational programs. Even if we accept these allegations as true (there is no evidence in the record to support them), we do not find this more restrictive form of incarceration to be sufficiently prejudicial to overcome the other Barker factors which do not sustain a speedy trial violation. Cf. United States ex rel. Mitchell v. Fairman, 750 F.2d 806, 809 (7th Cir.1984) (although defendant's liberty was constrained while awaiting trial, it was more important that his defense was not harmed by the delay and that he failed to point to his pretrial incarceration as a significant harm from the delay).
 
 
 15
 As a final attempt to save his claim, Jackson makes vague assertions of ineffective assistance of trial counsel to explain his failure to object to the continuances requested by his co-defendant or to move for an earlier trial date. There is a strong presumption that counsel provided reasonable professional assistance. Strickland v. Washington, 466 U.S. 668, 689 (1984). None of the government's or co-defendant's actions which caused the delay appear to have been unreasonable. Because Jackson suffered no prejudice to his defense from the delay in this case and there is no indication that counsel should have been aware of potential prejudice to Jackson when co-defendant Bates requested the first continuance, we do not find that her performance fell below an objective level of reasonableness as outlined in Strickland. 466 U.S. at 687-91.
 
 
 16
 Weighing the four factors of Barker together, we hold that Jackson's Sixth Amendment right to a speedy trial was not violated. The denial of the petition for a writ of habeas corpus is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). None of the parties filed such a statement, and therefore the appeal is submitted on the briefs and the record
 
 
 [1]
 Jackson contends that he never received notice of the continuance. It is true that the docket sheet does not reflect the grant of continuance by the trial court; however, both the trial judge and the attorney for Jackson's co-defendant submitted affidavits on direct appeal indicating that the request was made and that Jackson's attorney was notified of the continuance. Jackson attached a letter to his habeas petition addressed to him from his attorney wherein counsel stated that to the best of her recollection, she was not present when the request for the continuance was made. She stated, "I found out about it after the fact I think." Even if true, counsel could still have objected or filed a motion to sever Jackson's trial