92 F.3d 1187
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Hiriam BROWN, Petitioner-Appellant,
v.
Keith NELSON, Warden, Dixon Correctional Center,
Respondent-Appellee.**
 No. 95-2528.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 19, 1996.*
Decided July 31, 1996.
 
 Before POSNER, Chief Judge, and ROVNER and EVANS, Circuit Judges.
 
 ORDER
 
 1
 Hiriam Brown appeals the district court's denial of his petition for a writ of habeas corpus. 28 U.S.C. § 2254.[1] Brown argues that he is entitled to relief because evidence seized in violation of the Fourth Amendment was used against him at trial and because there was inordinate delay in bringing him to trial following his indictment, in violation of the Sixth Amendment's guarantee of a speedy trial. The district court ruled against him on these claims and it is upon these issues that he now appeals. In the district court, Brown also claimed that he had been denied the opportunity to confront some of the witnesses against him. The district court ruled against him on this issue as well, but Brown has not pressed this claim on appeal.
 
 
 2
 The case stems from a 1971 attempted robbery of a nightclub and restaurant on the south side of Chicago. During the incident, Brown, who had three accomplices, shot and killed a deputy United States marshal who was a customer in the restaurant. A jury convicted Brown in an Illinois court of murder and four counts of attempted armed robbery. Part of the evidence used to convict Brown was a .45 caliber automatic weapon and a hat recovered from the car in which the suspects were seen fleeing the scene. Police officers had chased the car, but the perpetrators jumped out of the moving car without being apprehended. After the car crashed (absent the suspects), the police officers found in the car, inter alia, a white hat trimmed in black. They found a .45 caliber weapon 60 feet away from the car.
 
 
 3
 We first address Brown's Fourth Amendment claim. At trial, a bartender at the club identified the hat and gun as the ones used in the holdup by someone resembling Brown. On cross-examination, Brown denied owning or possessing a .45 caliber automatic weapon and said he was not wearing a hat on the night of the incident. At that point the prosecutor showed Brown a photograph of himself wearing a white, black-trimmed, wide-brimmed hat and holding a .45 caliber automatic weapon in one hand (as well as a .38 caliber revolver in the other hand).
 
 
 4
 The photographs had been recovered by the police during a search of Brown's home. The trial judge found that an unknown informant or informants had told the police that Brown was seen with one of the other perpetrators of the attempted robbery one-half hour prior to the incident. Armed with this information (but not having a search or arrest warrant) several police officers went to Brown's residence intending to arrest him. When they arrived, a teenage girl came to the door and told the officers that Brown lived there but was not currently at home. The girl allowed the police to enter and search for Brown. In the course of this search the officers found several photographs in plain view, including the one of Brown wearing the hat while holding the gun. Brown's attorney objected to the admission of these photographs because he claimed they were seized in violation of the Fourth Amendment. (Also in plain view was a shotgun which Brown also objected to being admitted into evidence for the same reasons.). The trial judge overruled Brown's objection.
 
 
 5
 A federal court cannot grant a writ of habeas corpus to remedy a violation of the Fourth Amendment in cases in which the petitioner was afforded a full and fair opportunity to litigate the issue in the state courts at trial and on direct appeal. Stone v. Powell, 428 U.S. 465, 494 (1976); Pierson v. O'Leary, 959 F.2d 1385, 1391 (7th Cir.), cert. denied, 506 U.S. 857 (1992). To determine whether a petitioner has had a full and fair opportunity to litigate his claim, we ask whether "(1) the petitioner has clearly informed the state court of the factual basis for that claim and has argued that those facts constitute a violation of the petitioner's fourth amendment rights and (2) [whether] the state court has carefully and thoroughly analyzed the facts and applied the proper constitutional case law to the facts." Pierson v. O'Leary, 959 F.2d at 1391. If the above elements are met, we will not reach the merits of the petitioner's Fourth Amendment claim.
 
 
 6
 Before addressing the application of Stone to the present case, we evaluate Brown's argument that Stone does not apply to the present case because it was decided after the commission of the crime. Brown argues that this is an ex post facto law that violates the Constitution. The ex post facto clause prohibits criminalizing or increasing the punishment for an act after its completion, United States v. Couch, 28 F.3d 711, 713 (7th Cir.), cert. denied, 115 S.Ct. 495 (1994), whereas the Stone doctrine is a prudential limitation on the power of the federal courts to grant relief. Therefore there is no ex post facto violation in applying Stone retroactively. Generally "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice...." Bradley v. Richmond School Board, 416 U.S. 696, 711 (1974). We can see no injustice that will result if Stone applies to the present appeal, and therefore it governs here. See also United States v. Bensinger, 546 F.2d 1292, 1294 (7th Cir.1976), cert. denied, 431 U.S. 930 (1977) (holding that Stone governed a case in which the district court decision preceded Stone and the appeal took place after Stone ).
 
 
 7
 We now move onto the application of Stone. In this case, Brown filed a motion to suppress the evidence seized from his house on Fourth Amendment grounds. The trial court held a hearing on this motion and thoroughly analyzed the facts. We conclude, however, that the state court did not apply the correct constitutional standard in determining that the challenged evidence was properly obtained and that therefore Stone does not preclude our consideration of the merits. In concluding that the evidence was admissible, the trial court concluded that the police had probable cause to arrest Brown when they went to his residence. The court based this finding upon the fact that informants previously unknown to the police had told them that Brown had been seen with one of the offenders one-half hour prior to the attempted burglary. The trial court then stated that because they had probable cause the officers could enter the defendant's home to arrest him. The court noted that they could do this notwithstanding the fact that the person who answered the door told the officers that Brown was not home. Then, the court concluded that because the officers found the evidence during their attempt to locate Brown, their seizure of it was not illegal.
 
 
 8
 Our problem with the trial court's findings is based upon the law it applied to conclude that there was probable cause to arrest the petitioner. The court cited Draper v. United States, 358 U.S. 307 (1959), for the proposition that when the police act on the tip of ordinary citizen (as opposed to a professional informant), the police need not have any indication that the informant was reliable. The Draper Court did not make such a holding nor state such a position even in dicta. The Court stated that when a professional informant is used, the police must have prior evidence of reliability. The court made no statement as to what indication of reliability the police must have before acting upon the tip of a citizen informant.
 
 
 9
 Not only do we conclude that Brown did not have a full and fair hearing so that Stone does not limit our evaluation of the merits of his Fourth Amendment claim, we also find that the police did not have probable cause in this case to arrest Brown and that therefore the evidence that was found during the officers' search for Brown in his house should have been suppressed. At the suppression hearing, testimony established that the police decided to arrest Brown based only upon the tip of a unknown citizen or citizens. There was nothing to indicate that the person or persons who gave this information were reliable. Moreover, there was no corroborating evidence to indicate that the tip was reliable. Under both the doctrine in place at the time of the officers' search and the law as it stands today, the evidence was obtained in violation of the Fourth Amendment.
 
 
 10
 Under the doctrine that existed at the time of officers' actions, the determination as to whether a tip provided the police with probable cause to make an arrest was governed by a two-pronged test. In discussing what was needed to find that a magistrate's issuance of a warrant was constitutional, the Court stated: "First, the application [must] set forth ... the 'underlying circumstances' necessary to enable the magistrate independently to judge ... the validity of the informant's conclusion that the [evidence was] where he said it [was]. Second, the ... officers [must] support their claim that their information was ' "credible" or his information "reliable." ' " Spinelli v. United States, 393 U.S. 410, 413 (1969). In the present case, the officers testified that they had no prior or subsequent experience in getting information from the person or persons who told them about Brown. The officers did not know the informants' names and in fact did not indicate whether it was one or several people who told them about Brown. Beyond stating that these were "good citizens" who had "personal knowledge," the officers did not indicate why the information was reliable. In addition, beyond the mere conclusion that they were investigating Brown, the officers did not point to any information in addition to the tip that would indicate that Brown had committed the crime they were investigating. Thus, neither leg of the then-controlling doctrine was satisfied.
 
 
 11
 Even under the more flexible "totality of the circumstances" enunciated in Illinois v. Gates, 462 U.S. 213 (1983), that now governs informant cases, there was no probable cause to arrest Brown. Beyond the informant's tip, the officers did not give any other reason why they thought that Brown had committed the crime. Moreover, even though Spinelli, Gates, and other related cases dealt with professional informants, who often are not the most savory of characters, while the present case deals with a "regular citizen," this distinction is of no moment. An anonymous tip does not by itself even provide grounds for an investigatory stop, United States v. Hensley, 469 U.S. 221, 232 (1985); United States v. Ornelas-Ledesma, 16 F.3d 714, 718 (7th Cir.1994), much less probable cause to effect an arrest. See also United States v. Roth, 391 F.2d 507, 510 (1968) (finding no probable cause to support the issuance of a search warrant based upon unsupported allegations of an informant as relayed to a magistrate by a police officer). Therefore the evidence should have been excluded.
 
 
 12
 The above analysis notwithstanding, Brown is not necessarily entitled to a new trial. As the government correctly argues, even illegally obtained evidence may be used to impeach a defendant's testimony. Havens v. United States, 446 U.S. 620, 627-28 (1980); Doss v. Brewer, 685 F.2d 1003, 1013 (7th Cir.), cert. denied, 454 U.S. 845 (1982). We conclude that the picture of Brown with the hat and gun was admitted for purposes of impeachment in the present case. On direct examination, Brown denied owning the gun and hat recovered from the getaway car. On cross-examination Brown reiterated that he did not own the gun and hat and stated that he did not ever wear any hats. At this point the picture of Brown wearing a hat and holding a gun resembling the gun and hat from the getaway car were admitted into evidence. There was no limiting instruction requested or given. In Brewer, however, we did not conclude that the court's failure to give a limiting instruction when evidence not admissible in the prosecutor's case-in-chief was admitted for impeachment purposes, was a basis for granting a petition for habeas corpus. Thus, Brown is not entitled to the relief he seeks based upon his Fourth Amendment claim.
 
 
 13
 We now examine Brown's claim that he was denied his right to a speedy trial as guaranteed by the Sixth Amendment. The Supreme Court has enunciated a four-part test that courts are to apply when a speedy trial violation is asserted. We are to examine: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) the prejudice resulting from the delay. Barker v. Wingo, 407 U.S. 514, 530-31 (1972).
 
 
 14
 Brown was arrested on August 5, 1971, and his trial started on March 27, 1973. He was in custody during this period. The parties do not tell us what was happening in the case between August 5, 1971, and May 30, 1972, so we must focus on what happened after the latter date when Brown filed his motion to suppress evidence. Up until this point, neither side attempted to have the case called for trial. In fact, it does not appear that Brown was even ready for trial until August 8, 1972. At that time, however, his suppression motion had not been heard. Between August 8, 1972, and November 30, 1972, the hearing on the motion to suppress was continued several times, either on the court's own order or on a motion by the State. The parties have not given us the reasons for these continuances. On November 30, 1972, the court held a hearing on the suppression motion. The motion was taken under advisement, with a ruling to be issued a week later, on December 8.
 
 
 15
 In response to the judge's statement that he would rule on December 8, the State indicated that the 120-day term in which Brown's trial was required to commence under state law would end on December 6. The judge responded that this would not be a problem because the delay in bringing the case to trial was due, in part, to Brown's motion. We note this last colloquy only in passing, however, as a violation of state law on this point would not be grounds for granting a petition for habeas corpus. See 28 U.S.C. § 2254(a).
 
 
 16
 The state court, true to its word, ruled on the motion to suppress on December 8. It was denied, and the case was set to go to trial on January 8, 1973. The court then continued the case until February 21. On February 21, the trial date was changed again to March 27, 1973. On that date, the trial actually started.
 
 
 17
 We conclude that Brown's right to a speedy trial was not violated. There is no precise formula for us to apply to reach this conclusion because the standard for determining whether there has been a violation is "amorphous." Mitchell v. Fairman, 750 F.2d 806, 808 (7th Cir.1984) (citing Barker, 407 U.S. at 521-22). Therefore, we examine each of the relevant factors in light of the purpose of the speedy trial guarantee. We start with the length of the delay, 20 months from the time Brown was arrested until his trial began, which is a gateway to examination of the other factors. See Barker, 407 U.S. at 530 ("Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."); Mitchell, 750 F.2d at 808. The length of delay that will cause us to inquire into the other factors depends upon the circumstances of the case. In this case, we conclude that a 20-month delay between arrest and trial is presumptively prejudicial. We must therefore examine the other factors to see if Brown is entitled to relief.
 
 
 18
 The reasons for the delay and Brown's request for trial cut both ways. Some of the delay was due to the fact that Brown filed a motion to suppress evidence which required an evidentiary hearing. A delay reasonably caused by a defendant's motion should not count in favor of finding a violation of the right to a speedy trial. Mitchell, 750 F.2d at 808. However, not all of the delay here can be attributed to Brown's motion. First, there was a delay of almost 10 months prior to Brown's filing of his motion. Second, after Brown filed his motion, the court did not make a ruling for several months, with continuances having been granted upon the State's motion and, apparently, the court's motion as well. Nevertheless, Brown does not claim that the State caused any of these delays with the intent of holding up the proceedings. Regarding Brown's invocation of his rights, he made two demands for trial. However, he did not make the first request until August 8, 1972. Therefore, the delay after he made his request was only 8 months, not 20. While this is not an insubstantial period of time, we are less inclined to find a violation of Brown's right to a speedy trial than we would if he had made his demand earlier in the process. In sum, we conclude that three of the factors, the length of delay, the reason for delay, and Brown's demand for trial, do not strongly favor either Brown or the State. Therefore, whether his right to a speedy trial was violated turns upon the degree of prejudice, if any, he suffered.
 
 
 19
 We conclude that Brown did not suffer sufficient prejudice from the delay to support a finding that his Sixth Amendment right to a speedy trial was violated. Brown does not claim that his defense was impaired in any manner by the delay. This is not surprising, as a major piece of evidence was an eyewitness's identification of a hat and gun used in the robbery as resembling those shown in Brown's possession in the photograph we mentioned earlier. It would appear that the longer the delay, the more likely it is that the State's witness's memory would fade. However, the prejudice implicated in speedy trial cases also includes the burden of incarceration prior to trial. See United States v. Koller, 956 F.2d 1408. In this case, Brown was in custody between his arrest and his trial. However, given the other factors in this case, which only marginally raise speedy trial concerns, that incarceration was not sufficiently prejudicial for us to overturn his conviction. See, e.g., Barker, 407 U.S. at 532 (10-month pretrial incarceration does not rise to the level of serious prejudice); Mitchell, 750 F.2d at 810 (where the defendant suffers no "demonstrable harm" two-year unexplained delay not sufficient to "upset the conviction of a man clearly guilty of a heinous crime" even though the defendant was incarcerated or subject to restraint on freedom while out on bond during the period in question). Moreover, we assume Brown got credit on his sentence for the time that he served prior to his conviction. See ILL.REV.STAT.1971, Ch. 38, para. 119-3; ILL.REV.STAT.1985, Ch. 38, para. 1005-8-7(b) (current version at 730 ILCS 5/5-8-7). Therefore, his total incarceration will probably not be affected by the pretrial delay. Taking all the factors into account, we conclude that Brown's right to a speedy trial was not violated.
 
 
 20
 For all of these reasons, the district court correctly denied the petition for habeas corpus, and the judgment below is affirmed.
 
 
 
 **
 The original petition named Howard Peters, who was then the director of the Illinois Department of Corrections, as respondent. A petitioner for a writ of habeas corpus who is currently incarcerated should name his current custodian as the respondent, 28 U.S.C. § 2254, Rule 2. Therefore, Keith Nelson, the warden of Dixon Correctional Center, Brown's current place of incarceration, has been substituted as respondent. Fed.R.App.P. 43(c)(1)
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 On April 24, 1996, while this case was pending on appeal, the President signed into law the "Antiterrorism and Effective Death Penalty Act of 1996" (Pub.L. No. 104-132, 110 Stat. 1214). We need not determine to what extent that Act's amendments to federal habeas review govern cases pending when the Act became effective because we determine that even under the more expansive scope of review prior to the Act, Brown was not entitled to federal habeas corpus relief